UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: _____

MICHELE J. BENJAMIN,

    Plaintiff,

v.

DEPARTMENT OF CHILDREN
AND FAMILIES, an agency of the
State of Florida

    Defendants,
_____/

## COMPLAINT

Plaintiff MICHELE J. BENJAMIN ("Plaintiff" or "Benjamin") sues defendant DEPARTMENT OF CHILDREN AND FAMILIES ("Defendant"), and alleges:

### NATURE OF THE ACTION

1. This is an action by Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA"), to redress injury done to her by Defendant's discriminatory, harassing, and retaliatory treatment on the basis of sex.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e *et seq*., and 28 U.S.C. §§ 1331, 1343(3) and (4) and 1367(a).

3. Venue is proper in the United States District Court for the Middle District of

Florida pursuant to 28 U.S.C. § 1391, because Defendant resides in this district, having its principal place of business within this district; also, because Defendant is subject to the Court's personal jurisdiction with respect to the civil action at bar and because all or a substantial part of the events or omissions giving rise to this cause of action took place in this judicial district.

4. Plaintiff also invokes the supplemental jurisdiction of this Court to hear and decide claims arising under the laws of the State of Florida that are so related to claims in the action within the original jurisdiction of this district Court that they form part of the same case or controversy under Article III of the United States Constitution. Specifically, Plaintiff is bringing claims under the FCRA.

**PARTIES**

5. Plaintiff at all times material was a resident of Orange County, Florida, who was employed by Defendant and, as a woman, she is a member of certain protected classes of persons.

6. At all times material to this Complaint, Plaintiff was an "employee" and "aggrieved person" as defined by 42 U.S.C. § 2000e(f); 42 U.S.C. § 12111(4); and Fla. Stat. § 760.02(10). Plaintiff specifically incorporates the definitions of "employee" and "aggrieved person."

7. At all times material, Defendant DEPARTMENT OF CHILDREN AND FAMILIES was an agency of the State of Florida authorized to conduct business in the State of Florida, in Orange County, and within the jurisdiction of this Court.

8. At all times material, Defendant was an "employer" as defined by 42 USCS § 12111(5); 42 USC § 2000e(a) and (b); 42 U.S.C. § 12111(4); and Fla. Stat. § 760.02(7). Plaintiff specifically incorporates the definition of "employer."

9. At all times material, Defendant employed fifteen (15) or more employees for each

working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## PROCEDURAL REQUIREMENTS

10. All conditions precedent to bringing this action have been fulfilled. Plaintiff dual-filed three Charges of Discrimination with the EEOC, and also with the Florida Commission on Human Relations within 300 days of the alleged violation. To date, over six (6) months have passed since the filing of the complaints. On or about August 17, 2021, the U.S. Equal Employment Opportunity Commission, through the Department of Justice, issued to Plaintiff a Dismissal and Notice of Rights with respect to such charge of discrimination. *See* **composite Exhibit "A."**

## STATEMENT OF FACTS

11. Plaintiff was employed by the Defendant as a child protective investigator in the Orlando, FL office from December 20, 2019, until her termination on, or about May 5, 2020.

12. Shortly after she began her employment, she became the victim of inappropriate, unwanted, and illegal sexual harassment and assault at the hands of her direct supervisor Tamira Williams.

13. After she complained of these actions, she was retaliatorily harassed and ultimately terminated.

14. Prior to starting the job, Plaintiff applied for a position with the Defendant on, or about, July 12, 2019, at which time she submitted information regarding her degree and college transcripts.

15. On, or about, November 4, 2019, Plaintiff's credentials were verified, and she moved forward in the hiring process.

16. Plaintiff received an offer for full-time employment with benefits on, or about November 26, 2019, scheduled to begin on December 20, 2019.

17. After she began Plaintiff started a training program and began working with Ms. Williams.

18. Plaintiff began experiencing problems with Ms. Williams soon after she started working with her.

19. Beginning on, or about, January 8, 2020, Ms. Williams would ask Plaintiff to come into work a little early so that she could spend time with her, however she did not say why.

20. On one occasion Plaintiff went to the office early and Ms. Williams was sitting on the front of the desk. Her top was very low cut, and she was displaying a large part of her breast with a tattoo above her right breast was visible.

21. When Plaintiff walked in Ms. Williams was licking her lips and told Plaintiff that she was late.

22. Ms. Williams then said that she "didn't want anyone else to be there so [they] could spend time alone together."

23. She then began to ask Plaintiff how her parents felt when they found out that she was attracted to women and how long did it take to decide that she liked women.

24. Beginning on, or about January 10, 2020, Ms. Williams began telling Plaintiff in person and via text message that she loved her swag.

25. On multiple occasions Ms. Williams commented, among other things, that "every time I see you, I can't stop smiling; I'm attracted to your swag; I'm attracted to the way you dress and cologne you wear; my day gets better when you come around."

26. Ms. Williams also encouraged Plaintiff to get a personal Facebook page so she could follow her easier.

27. On or about January 12, 2020, Ms. Williams called Plaintiff to come from her training class to see her then asked what her pronouns were.

28. Ms. Williams then said Plaintiff looked so good and asked if she had ever thought about transitioning.

29. Ms. Williams also showed Plaintiff a figure eight tattoo with pride colors on her upper shoulder and told Plaintiff that she was bi-sexual.

30. Plaintiff was shocked and told Ms. Williams that she needed to get back to work.

31. Ms. Williams responded that she needed Plaintiff to get back to her training class because she did not want anyone coming to look for her.

32. Over the next few days, Ms. Williams would text Plaintiff during her training class and tell her to say she had to use the bathroom to come upstairs to hang with her.

33. Ms. Williams again asked Plaintiff to setup a Facebook page and said that Plaintiff should send her a picture and she would let Plaintiff know if it was sexy enough to put on her page.

34. On another occasion, Ms. Williams asked Plaintiff to leave class and help her move her office.

35. Plaintiff told her that she would not leave class but would come afterwards.

36. When she came into the office, Ms. Williams stood in front of the door, blocking Plaintiff's exit, and said that she was so sexy.

37. Plaintiff indicated that "we will have a problem if I can't exit the office," and said

that Ms. Williams was scarring her.

38. Ms. Williams asked Plaintiff why she got scared so easily.

39. Ms. Williams subsequently turned away from Plaintiff and looked back over her shoulder, then lifted her shirt and showed Plaintiff her thong.

40. On, or about January 14, 2020, Ms. Williams indicated that she wanted Plaintiff to go out with an experienced investigator, Kimberly Lang.

41. She said that she was also coming and would ride with Plaintiff while Ms. Lang drove separately.

42. Once they arrived at the location, while Ms. Lang was conducting as interview, Ms. Williams stared at Plaintiff from head to toe, licking her lips.

43. Plaintiff became uncomfortable and walked outside but Ms. Williams told her to come back in because she was missing out, and her behavior continued.

44. Ms. Williams then told Ms. Lang to visit one child by herself while she and Plaintiff went to see another child in Apopka, FL.

45. On the way there Ms. Williams told Plaintiff that her boyfriend, who had surgery to transition, was not satisfying her at home and his penis did not get erect.

46. She then asked Plaintiff if she was good at using a strap on, and said Plaintiff looked like she knew how to use one.

47. When Plaintiff asked Ms. Williams why she was talking to her about using a strap, she responded "I want to make love to you and kiss you in all the places no one has seen or touched."

48. After they conducted the interview and got back in the car, Ms. Williams said that

6

they were not going back to the office, and she wanted to spend intimate time with Plaintiff.

49. Ms. Williams told Plaintiff which direction to drive but did not provide a destination.

50. Plaintiff eventually got frustrated and hungry, so she stopped to get something to eat.

51. Ms. Williams said that she wanted "to know what it tastes like." She then leaned in, kissed Plaintiff, and grabbed Plaintiff's hand and put it down her blouse.

52. Plaintiff pulled away and exclaimed, "OMG, what are you doing?" Ms. Williams responded that she was offended, and she thought I liked women.

53. Plaintiff drove back to the office.

54. After that date, Ms. Williams would hold meetings that Plaintiff would not attend.

55. On, or about February 12, 2020, Ms. Williams called to ask why Plaintiff was not attending meetings. When she called back Ms. Williams answered, "hey delicious."

56. Plaintiff subsequently told her trainer, Anika Seymour, what was happening with Ms. Williams.

57. Ms. Seymour told another trainer, Anastasia Dixon, and they reported it to program administrator, Lashara Brown.

58. On, or about February 13, 2020, Plaintiff was moved to another center and instructions were given to continue to restrict her work activities and keep her in the office when field work is required.

59. On February 14, 2020, Ms. Williams resigned.

60. After she reported Ms. Williams actions, Plaintiff began experiencing other

problems at work.

61. She was subsequently notified that the Defendant did not believe her degree from the University of Manitoba was accredited and was told to get a letter from the school, which she did.

62. Then on, or about March 19, 2020, Plaintiff was notified by acting program administrator, Ebony Roberts-Owiredu, that they did not accept her degree and she had to either resign or take a demotion.

63. On March 20, 2020, Ms. Roberts-Owiredu informed Plaintiff that she had been receiving complaints about her but did not provide an explanation of what the complaints were or who complained.

64. On March 25, 2020, Plaintiff participated on a conference call with operations manager, Shakira Hunt, HR representative Melissa Quinonez, and Ms. Roberts-Owiredu and as told not to speak anything of the sexual harassment.

65. On April 1, 2020, Plaintiff's access through her state issued laptop and cell phone was terminated and Ms. Roberts-Owiredu asked her to use all her sick time to fill in her timesheet despite not being sick.

66. Ms. Roberts-Owiredu then informed Plaintiff that she would only re-gain access when she went down to the office and accepted the demotion.

67. On or, about April 29, 2020, Ms. Roberts-Owiredu called various members of Plaintiff's family in a harassing manner attempting to gather information about Plaintiff, and her family.

68. On April 30, 2020, Plaintiff sent a letter to Ms. Hunt via certified mail regarding

Ms. Roberts-Owiredu's inappropriate communications and requested that it stop immediately.

69. Then finally, on May 7, 2020, Plaintiff received a letter via certified mail signed by Respondent's director Stephanie Weiss informing her that she had been terminated, effective May 5, 2020. No reason was provided.

## COUNT I
## VIOLATION OF TITLE VII: DISCRIMINATION BASED ON SEX

70. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-69 above as if set out in full herein.

71. Plaintiff is a member of a protected class of women.

72. At all times material hereto, the Defendant failed to comply with Title VII [42 U.S.C. 2000 e-2 (a)], which states, "It shall be an unlawful employment practice for an employer to: (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's sex, color, religion, sex, or national origin."

73. Williams sexually harassed, made repeated unwanted advances towards, and assaulted Plaintiff as more fully described in paragraphs 11 - 69 of this Complaint.

74. The harassment and assault were made towards Plaintiff because of her sex. Alternatively, Plaintiff's sex was a motivating factor that made Williams sexually harass and assault Plaintiff.

75. This sexual harassment and assault significantly changed the terms and conditions of Plaintiff's employment.

76. Defendant knew or should have known of Williams' sexual harassment towards Plaintiff but failed to appropriately act.

77. Actual knowledge of Williams' harassment of Plaintiff is also imputed on Defendant by virtue of Williams' position as a supervisor.

78. The Defendant failed to investigate or intervene to prevent Plaintiff's sexual harassment and assault and retaliated against Plaintiff.

79. As a direct and proximate result of the Defendant's failure to act to stop and prevent the sexual harassment and sexual assault of Plaintiff, she has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a) Enter judgment in Plaintiff's favor and against Defendant for its violations of Title VII;

b) Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c) Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and continues to suffer;

d) Award reinstatement;

e) Award Plaintiff prejudgment interest on her damages award;

f) Award Plaintiff reasonable costs and attorney's fees; and

g) Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT II
## VIOLATION OF TITLE VII: SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT

80. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-69 above as if set out in full herein.

81. As a woman Plaintiff is a member of a protected class.

82. Williams has subjected Plaintiff to unwanted sexual harassment, sexual advances, and, as more fully described in paragraphs 11 - 69 of this Complaint.

83. The offensive and harassing conduct referred to in paragraphs 11 - 69 of this Complaint was offensive to Plaintiff and would be offensive to a reasonable person.

84. Williams' harassment and assault towards Plaintiff were based upon Plaintiff's sex. Alternatively, Plaintiff's sex was a motivating factor that made Williams harass Plaintiff.

85. As a result of Williams' sexual harassment and assault upon Plaintiff, the terms, conditions, and privileges of Plaintiff's employment, were so perverse as to adversely alter the work environment and to create an abusive and hostile work environment.

86. Williams' sexual harassment towards Plaintiff was done knowingly and intentionally, and in willful, wanton, and reckless disregard of Plaintiff's federally protected rights.

87. Defendant knew or should have known of Williams' sexual harassment towards Plaintiff but failed to appropriately act.

88. Actual knowledge of Williams' harassment of Plaintiff is also imputed on Defendant by virtue of Williams' position as a supervisor.

89. As a direct and proximate result of Williams' sexual harassment towards Plaintiff

and the Defendant's inaction, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation and physical injuries and distress.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor, and against the Defendant as follows:

a. Enter judgment in Plaintiff's favor and against Defendant for its violations of TITLE VII;

b. Reinstate Plaintiff to the same position she held before the retaliatory personnel action, or to an equivalent position.

c. Reinstate full fringe benefits and seniority rights to Plaintiff.

d. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

e. Award Plaintiff compensatory damages under the TITLE VII for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and continues to suffer;

f. Award Punitive damages according to proof;

g. Award Plaintiff prejudgment interest on her damages award;

h. Award Plaintiff reasonable costs and attorney's fees; and

i. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT III
## VIOLATION OF TITLE VII: SEXUAL HARASSMENT RETALIATION

90. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-69 above as if set out in full herein.

91. As a woman Plaintiff is a member of a protected class.

92. Williams has subjected Plaintiff to unwanted and unwelcome sexual harassment, sexual advances, and assault.

93. Williams' sexual harassment and the related retaliation against Plaintiff were based upon Plaintiff's sex. Alternatively, Plaintiff's sex was a motivating factor that made Williams harass and assault Plaintiff, and the Defendant retaliate against her.

94. Plaintiff notified her trainer Anika Seymour, who told another trainer Anastasia Dixon of Ms. Williams' harassment. This Harassment was subsequently reported it to program administrator, Lashara Brown.

95. After reporting the harassment, Plaintiff was moved to a new office and restricted to office work, the veracity of her degree was questioned, she and her family were investigated and harassed.

96. When Plaintiff complained about the treatment she received after reporting the harassment she was terminated.

97. At the time of the unlawful retaliation, Plaintiff satisfactorily performed the essential job functions assigned to her by Defendant.

98. Any alleged nonretaliatory reason for the termination of Plaintiff's employment asserted by Defendant is a mere pretext for the actual reason for the termination from

employment.

99. As a direct and proximate result of the retaliation against Plaintiff, she has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation and physical injuries and distress.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor, and against the Defendant as follows:

a. Enter judgment in Plaintiff's favor and against Defendant for its violations of TITLE VII;

b. Reinstate Plaintiff to the same position she held before the retaliatory personnel action, or to an equivalent position.

c. Reinstate full fringe benefits and seniority rights to Plaintiff.

d. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

e. Award Plaintiff compensatory damages under the TITLE VII for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and continues to suffer;

f. Award Punitive damages according to proof;

g. Award Plaintiff prejudgment interest on her damages award;

h. Award Plaintiff reasonable costs and attorney's fees; and

i. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 CHAPTER 760; DISCRIMINATION BASED ON SEX

100. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-69 above as if set out in full herein.

101. At all times material hereto, the Employer/Defendant failed to comply with the Florida Civil Rights Act of 1992 [Florida Statutes Section 760.10] which states,

*"It is an unlawful employment practice for an employer: To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's sex,* color, *religion, sex, national origin, age, handicap, or marital status"*

102. Plaintiff is a member of a protected class under the FCRA, Sections 760.01-760.11, based on her sex (female).

103. Williams sexually harassed, made repeated unwanted advances towards, and assaulted Plaintiff as more fully described in paragraphs 11 - 69 of this Complaint.

104. The harassment and assault were made towards Plaintiff because of her sex. Alternatively, Plaintiff's sex was a motivating factor that made Williams sexually harass and assault Plaintiff.

105. This sexual harassment and assault significantly changed the terms and conditions of Plaintiff's employment.

106. Defendant knew or should have known of Williams' sexual harassment towards Plaintiff but failed to appropriately act.

107. Actual knowledge of Williams' harassment of Plaintiff is also imputed on Defendant by virtue of Williams' position as a supervisor.

108. The Defendant failed to investigate or intervene to prevent Plaintiff's sexual

harassment and assault and retaliated against Plaintiff.

109. As a direct and proximate result of the Defendant's failure to act to stop and prevent the sexual harassment and sexual assault of Plaintiff, she has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

**WHEREFORE,** Plaintiff requests that this Court enter judgment in his favor and against the Defendant as follows:

   a. Enter judgment in Plaintiffs favor and against Defendant for damages;

   b. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

   c. Award Plaintiff compensatory damages under the for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and continues to suffer;

   d. Award Plaintiff prejudgment interest on his damages award;

   e. Award any other compensation allowed by law, attorney's fees (448.104) and such other and further relief, as this Court deems equitable and just.

<u>**COUNT V**</u>
<u>**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 CHAPTER 760;**</u>
<u>**SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT**</u>

110. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-69 above as if set out in full herein.

111. Plaintiff is a member of a protected class under the FCRA, Sections 760.01-

760.11, based on her sex (female).

112. Williams has subjected Plaintiff to unwanted sexual harassment, sexual advances, and, as more fully described in paragraphs 11 - 69 of this Complaint.

113. The offensive and harassing conduct referred to in paragraphs 11 - 69 of this Complaint was offensive to Plaintiff and would be offensive to a reasonable person.

114. Williams' harassment and assault towards Plaintiff were based upon Plaintiff's sex. Alternatively, Plaintiff's sex was a motivating factor that made Williams harass Plaintiff.

115. As a result of Williams' sexual harassment and assault upon Plaintiff, the terms, conditions, and privileges of Plaintiff's employment, were so perverse as to adversely alter the work environment and to create an abusive and hostile work environment.

116. Williams' sexual harassment towards Plaintiff was done knowingly and intentionally, and in willful, wanton, and reckless disregard of Plaintiff's federally protected rights.

117. Defendant knew or should have known of Williams' sexual harassment towards Plaintiff but failed to appropriately act.

118. Actual knowledge of Williams' harassment of Plaintiff is also imputed on Defendant by virtue of Williams' position as a supervisor.

119. As a direct and proximate result of Williams' sexual harassment towards Plaintiff and the Defendant's inaction, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation and physical injuries and distress.

**WHEREFORE,** Plaintiff requests that this Court enter judgment in his favor and against the Defendant as follows:

   a. Enter judgment in Plaintiffs favor and against Defendant for damages;

   b. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

   c. Award Plaintiff compensatory damages under the for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and continues to suffer;

   d. Award Plaintiff prejudgment interest on his damages award;

   e. Award any other compensation allowed by law, attorney's fees (448.104) and such other and further relief, as this Court deems equitable and just.

**COUNT VI**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1922 CHAPTER 760:**
**SEXUAL HARASSMENT - RETALIATION**

120.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-69 above as if set out in full herein.

121.   Plaintiff is a member of a protected class under the FCRA, Sections 760.01-760.11, based on her sex (female).

122.   Williams has subjected Plaintiff to unwanted and unwelcome sexual harassment, sexual advances, and assault.

123.   Williams' sexual harassment and the related retaliation against Plaintiff were based upon Plaintiff's sex. Alternatively, Plaintiff's sex was a motivating factor that made Williams harass and assault Plaintiff, and the Defendant retaliate against her.

124.   Plaintiff notified her trainer Anika Seymour, who told another trainer Anastasia

Dixon of Ms. Williams' harassment. This Harassment was subsequently reported it to program administrator, Lashara Brown.

125. After reporting the harassment, Plaintiff was moved to a new office and restricted to office work, the veracity of her degree was questioned, she and her family were investigated and harassed.

126. When Plaintiff complained about the treatment she received after reporting the harassment she was terminated.

127. At the time of the unlawful retaliation, Plaintiff satisfactorily performed the essential job functions assigned to her by Defendant.

128. Any alleged nonretaliatory reason for the termination of Plaintiff's employment asserted by Defendant is a mere pretext for the actual reason for the termination from employment.

129. As a direct and proximate result of the retaliation against Plaintiff, she has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation and physical injuries and distress.

**WHEREFORE,** Plaintiff requests that this Court enter judgment in his favor and against the Defendant as follows:

    a. Enter judgment in Plaintiffs favor and against Defendant for damages;

    b. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

    c. Award Plaintiff compensatory damages under the for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and

      continues to suffer;

d. Award Plaintiff prejudgment interest on his damages award;

e. Award any other compensation allowed by law, attorney's fees (448.104) and such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: September 14, 2021.

                                        Respectfully submitted,

                                        **s/Brandon Gibson**
                                        Brandon Gibson (FBN: 99411)
                                        E-mail: bgibson@bjglawfirm.com
                                        THE LAW OFFICE OF BRANDON J. GIBSON, PLLC
                                        3800 Inverrary Blvd, Ste. 401-T
                                        Lauderhill, Florida 33319
                                        Telephone: (754) 229-1151
                                        Facsimile: (844) 761-8555
                                        *Counsel for Plaintiff(s)*